IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROGER D. SMITH,

    Plaintiff,

v.                                             Case No. 2:20-cv-00548

BRIAN PENICK, *et al.*,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before the court is Defendants' Motion to Strike (ECF No. 12-1) seeking to strike numerous allegations and exhibits from Plaintiff's Verified Complaint (ECF No. 2) as being immaterial and impertinent to his claims for relief against the named defendants. Plaintiff has opposed the motion (ECF No. 20). For the reasons stated herein, it is hereby **ORDERED** that the motion to strike is **DENIED WITHOUT PREJUDICE**.

    *I.*    *ALLEGATIONS IN VERIFIED COMPLAINT*

    At the outset, identification of the named defendants and a discussion of the allegations contained in the Verified Complaint is in order. Plaintiff has named the following defendants: Correctional Officer Samuel Pauley ("Pauley") and Sergeant Johnny Wilson ("Wilson"), who are alleged to have used excessive force against Plaintiff by spraying chemical agents into his cell on the Quilliams II segregation unit at the Mount Olive Correctional Complex ("MOCC") on July 24, 2019; Captain Brian Penick ("Penick"), a Supervisor of the Quilliams segregation units at MOCC; Jonathan Frame ("Frame"), the Associate Superintendent of Security at MOCC; Donald Ames ("Ames"), the

Superintendent at MOCC; and Betsy Jividen ("Jividen"), the Commissioner of the West Virginia Division of Corrections and Rehabilitation (WVDCR). Defendants Pauley and Wilson are sued only in their individual capacity. Defendants Penick, Frame, Ames, and Jividen, who are sued in both their individual and official capacities, will collectively be referred to as the "Supervisory Defendants."

The Verified Complaint is 65 pages long and contains 266 paragraphs, with an additional 92 pages of exhibits. Paragraphs 1-80 of the Verified Complaint introduce the parties and then address the facts surrounding the July 24, 2019 events involving Plaintiff and the conduct of Defendants Pauley and Wilson. (ECF No. 2 at 4-15, ¶¶ 7-80). Defendants do not seek to have any of those paragraphs stricken.

Paragraphs 81-102 allege facts surrounding a history, pattern, or practice of the use of chemical agents against inmates in the Quilliams segregation units at MOCC, the alleged implementation of a practice known as "Martial Law" and "Martial Law II or 2.0," the alleged overcrowding and understaffing of MOCC, and the Supervisory Defendants' alleged knowledge of and deliberate indifference to such conduct and conditions. (*Id.* at 16-50, ¶¶ 81-201).

Plaintiff contends that Pauley and Wilson's conduct violated his rights under the Eighth and Fourteenth Amendments (Counts I and II) and further constituted assault and battery under West Virginia law (Count III).[1] (*Id.* at 50-56, ¶¶ 203-233). Plaintiff further alleges that the Supervisory Defendants should be held liable due to their actual knowledge of, and tacit authorization of, a pattern and practice of constitutional violations by their subordinates through the excessive and unnecessary use of chemical

---

[1] Plaintiff's other state law claim of intentional infliction of emotional distress (Count VI) (ECF No, 2 at 62-63, ¶¶ 257-264) was dismissed as duplicative of the assault and battery claim by the presiding District Judge on September 3, 2021. (ECF No. 22).

2

agents against Plaintiff and other inmates in the Quilliams segregation units (Count IV). (*Id.* at 56-58, ¶¶ 234-242). He further contends that Defendants Frame, Ames, and Jividen should be held liable for their actual knowledge of, and tacit authorization of or deliberate indifference to, a serious risk to the health and safety of Plaintiff and other inmates at MOCC due to chronic overcrowding and understaffing, which he further claims has directly led to several unconstitutional uses of force (Count V). (*Id.* at 58-62, ¶¶ 243-256). Plaintiff seeks monetary damages. (*Id.* at 63-64, "Relief"). The exhibits attached to the Verified Complaint largely consist of grievance documents and responses, as well as affidavits and documents drafted by Plaintiff and other inmates concerning the alleged implementation of the "Marshal Law" policy at MOCC and addressing various uses of chemical agents by MOCC staff on inmates in the Quilliams segregation units from 2012 until October of 2019. (ECF No. 2-1 at 1-92).

## II. DEFENDANTS' MOTION AND PLAINTIFF'S RESPONSE

On October 6, 2020, Defendants filed the instant Motion to Strike (ECF No. 12-1). Defendants assert that the Verified Complaint contains numerous superfluous historical allegations that are immaterial or impertinent to Plaintiff's causes of action arising out of the July 24, 2019 incident. They further contend that the exhibits attached thereto consist of unrelated evidentiary materials that are not "written instruments" that may be considered integral to the complaint under Rule 10(c) of the Federal Rules of Civil Procedure. (ECF No. 13 at 5-8). Thus, Defendants request that the court strike paragraphs 83-107, 128-132, 134-157, 159-169, and 171-201 pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, and that all exhibits attached thereto be stricken pursuant to Rules 10(c) and/or 12(f). (*Id.*)

In the alternative, Defendants assert that, at the very least, Exhibits 1-18, 28, 30, 34-36, 41, and 42 should be stricken as violating Rule 12(f) because they are immaterial and impertinent to the substantial issues of fact in this case. (*Id.* at 8). Defendants assert that striking these allegations and documents will avoid unnecessary litigation because the bulk of Plaintiff's allegations in paragraphs 83-201 address issues involving other inmates, other correctional officers or supervisory officials, and predate Plaintiff's claims of excessive force by five to seven years.[2] (*Id.* at 6-7).

Plaintiff, on the other hand, emphasizes that motions to strike are disfavored and he contends that none of his allegations or exhibits should be stricken because they "show the *modus operandi* of the Defendants in their actions" and "establish[] the necessary factual background for determination of Defendants' actions." (ECF No. 20 at 4). He further contends that these allegations and exhibits show "the pattern of abusive behaviour [sic] which the Defendants exhibit[] to inmates." (*Id.*) Defendants did not file a reply brief. Thus, the motion to strike is fully briefed and ready for resolution.

### III.    DISCUSSION

This matter calls into question the pleading requirements and scope of supervisory liability claims. In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). Nonetheless, the complaint must plead enough facts "to state a claim to

---

[2] The undersigned notes that Plaintiff's Verified Complaint also addresses uses of force against other inmates that post-date his July 24, 2019 incident, as well as documents concerning Defendants' responses to his grievances and complaints concerning the July 24, 2019 that were rendered after that date.

relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, the court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the court] to draw on its judicial experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). While the court construes a *pro se* plaintiff's allegations "liberally," the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

This plausibility standard is especially important when a plaintiff is attempting to hold a supervisor, who was not directly involved in the alleged misconduct, liable for the alleged violation of the plaintiff's constitutional rights based upon the supervisor's tacit authorization of or deliberate indifference to a widespread pattern and practice of such misconduct. "It is well settled that, under § 1983, 'supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates.'" S*haw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). However, a supervisor can only be liable for his or her own misconduct and cannot have § 1983 liability under a *respondeat superior* or vicarious liability theory. *Iqbal*, 556 U.S. at 677; *accord Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984); *see also Johnson v. Balt. Police Dep't*, 452 F. Supp. 3d 283, 304 (D. Md. 2020).

Since *Iqbal*, the appellate courts have made it clear that a plaintiff must state more than threadbare and conclusory allegations that a supervisor condoned misconduct by his or her subordinates. "[T]he rule demands more than bald accusations or mere speculation." *Johnson*, 452 F. Supp. 3d at 295. Rather, plaintiffs alleging supervisory liability must show:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (alteration omitted) (quoting *Shaw*, 13 F.3d at 799). Whether supervisory liability exists "is ordinarily [an issue] of fact, not law." *Shaw*, 13 F.3d at 799; *see also Johnson*, 452 F. Supp.3d at 304. Accordingly,

6

Plaintiff must allege sufficient facts concerning these elements to state a proper claim against each of the Supervisory Defendants.

The first two factors are somewhat intertwined. With respect to the first factor, Plaintiff must establish that the subordinate's misconduct "is widespread, or at least has been used on several different occasions[,] and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury." *Wilkins*, 751 F.3d at 226 (quoting *Shaw*, 13 F.3d at 799). The second element, the supervisors' deliberate indifference to the allegedly unconstitutional practices, can be established "by demonstrating a supervisor's continued inaction in the face of documented widespread abuses." *Id.* (quoting *Shaw*, 13 F.3d at 799). In *Slakan*, the Fourth Circuit explained how a plaintiff meets the "heavy burden" to show deliberate indifference:

> Ordinarily, [the plaintiff] cannot satisfy his burden of proof by pointing to a single incident or isolated incidents, for a supervisor cannot be expected to promulgate rules and procedures covering every conceivable occurrence within the area of his responsibilities. Nor can he reasonably be expected to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct. A supervisor's continued inaction in the face of documented widespread abuses, however, provides an independent basis for finding he either was deliberately indifferent or acquiesced in the constitutionally offensive conduct of his subordinates.

737 F.2d at 373 (internal citation omitted). Thus, a plaintiff bringing a claim grounded in supervisory liability must allege a pattern of conduct providing reference to prior similar incidents by officers under the management and administration of the supervisor. *See Devi v. Prince George's Cty.*, No. 16-cv-3790, 2017 WL 3592452, at *3 (D. Md. Aug. 21, 2017); *Martinez v. Foster*, No. 4:13-cv-59, 2017 WL 1251105, at *3 (E.D. Tex. Mar. 31, 2017) ("the 'actions must have occurred for so long or so frequently that the course of

7

conduct warrants the attribution . . . of knowledge that the objectionable conduct is the expected, accepted practice of [ ] employees.'")

Federal Rule of Civil Procedure 12(f) provides that a court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter[;]" however, such motions are generally disfavored and will not be granted unless the challenged allegations have no possible or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to a party. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001); Wright & Miller, Fed. Prac. & Proc. § 1382. In most cases, a motion to strike should not be granted unless "the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004). Where the motion involves background or historical material, a motion to strike should not be granted unless the material is prejudicial to the opponent. *LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992).

Because Plaintiff must allege a supervisor's actual knowledge of and acquiescence to specific instances of similar conduct to establish a factual basis for his supervisory liability claims, the undersigned cannot find that the challenged allegations in Plaintiff's Verified Complaint are immaterial or impertinent to the claims at issue. While the bulk of Plaintiff's allegations in support of his supervisory liability claims involve alleged uses of force that significantly pre-date Plaintiff's incident, and some of the allegations involve officers and supervisors who are not defendants herein, the undersigned cannot find that such allegations clearly have no possible connection to or bearing on the subject matter of the litigation. Moreover, the potential prejudice to all Defendants from having to defend against these allegations is not plainly apparent.

8

Nonetheless, the undersigned believes that the scope of Plaintiff's supervisory liability allegations could be narrowed and more properly pled. Accordingly, the undersigned finds that, in lieu of presently striking any allegations or exhibits, it is more appropriate to schedule a status conference with the parties to address the proper scope of Plaintiff's claims and determine whether an amended pleading would be warranted. Accordingly, it is hereby **ORDERED** that Defendants' Motion to Strike (ECF No. 12-1) is **DENIED WITHOUT PREJUDICE** and, by separate order, the undersigned will schedule a status conference to address these matters. Defendants have no obligation to respond to Plaintiff's Verified Complaint pending further order of the court after the status conference.

The Clerk is directed to mail a copy of this Memorandum Opinion and Order to Plaintiff and to transmit a copy to counsel of record.

ENTER: September 10, 2021

Dwane L. Tinsley
United States Magistrate Judge